The Court, on the second prayer, were of opinion, and so directed the Jury, that the warranty contained in the said deed bearing date the 2d of May, 1752, is a lineal warranty, and does not rebut and bar the claim of the lessor of the plaintiff unless it be proved that he received assets by descent from Orlando Griffith. To this opinion the defendant excepted.
(Johnson, Ch. J. and Goldsbokougu, J.,)
On the third prayer the Court were of opinion that the deeds of lease and release were sufficient in law to pass the estate of the said Catharine Griffith to the said Charles JRidgely, and directed the Jury accordingly.
The Court also were of opinion,(a) that the words of re *434 ference “first herein mentioned’’ in the act of assembly of 17G6, c. 14. s. 3. relates to the Provincial, Court and it is within the equity of the act, that the deed should be recorded in the General as well as the County Court, and no reason can assigned why it should not. There is a reason why the certificate should go from one county to the other, because the Justices of one county had no cognisance of the powers of the other. But the General Court Judges pervaded the whole, and the commissions of the Justices of the P eace are all recorded in the office of the General Court. If it had not been for the last clause, the clerk of the county would have had no authority to record the deed at all, but only the clerk of the General Court.
The plaintiff excepted to this opinion.
By the 4th exception it appears: The plaintiff offered evidence that on the day before the execution and acknowledgment of the deeds of lease and release from Catharine Griffith to Charles Ridgely, the said Ridgely sent to Joshua Griffith, son of the said Catharine, the following letter, viz.
“ Sir — Í shall be up at your house on Monday morning to see you and your mother concerning the land I hold called Timber Neck. If there should be any thing doubtful in my title, I hope it will be in our power to settle amicably with your assistance. If your mother should not be at your house, I should take it a favour if you should get her there on Monday morning if agreeable. If it is not in your power to do it, I beg you will let me know where I may meet with you and her on Monday morning.
Charles Ridgely, son of Jno.”
That the said Joshua Griffith sent for and procured the attendance of the Justices who took the acknowledgment of the. said deed, and held and guided the hand of the said Catharine while she signed the said deed; also that the said J ustices, at the time of the execution and acknowledgment of the said deed, trusted to the information of the said Joshua Griffith as to the said Catharine’s having any *435 knowledge of the contents of the said deeds, without inquiring of the said Catharine whether she knew the contents thereof, or reading the said deeds to her, or informing her of the contents thereof. And further gave in evidence the depositions of the two justices before whom the said deeds were acknowledged, stating that the deeds were not read to the said Catharine by them, and that she was very deaf, and that the said Joshua Griffith received from the said Charles the consideration for which the said deed was executed.
The plaintiff further offered in evidence that the said Catharine Griffith, at the time of the execution and acknowledgments of the said deeds had not sufficient reason and understanding to make a deed to convey land or dispose of property; and offered further to prove this fact by hearsay; and that the said Joshua Griffith, some little time after the execution and acknowledgments, did declare, that he was present at the execution of the said deeds and acknowledgments thereof; that his mother, the said Catharine, knew nothing- of it; that he g-uided her hand and transacted the whole business, and that she had not at that time sufficient reason and understanding to convey her hand or to make a deed.
To this evidence, so offered to be given, the defendant objected, and the Court (Johnson, Ch. J. and Goldsbokougii, J.) were of opinion, that the evidence so offered to be given was improper and inadmissible. The plaintiff excepted to this opinion.
Judgment for the defendant.
The plaintiff appealed to the Court of Appeals.
In the Court oj Appeals, June term, 1792.
Cooke, for the appellee. The husband being seised of an estate of inheritance, the deed of the 14th of September, 172.Ó, passed such interest us he might legally pass, though. *436 it could not operate to convey the estate of the wife, she , . being no party to it.
It may operate as a feoffment. If as a bargain and sale, it will convey a base fee till entry made by the wife. Cro. Jac. 332. 417. Law of Eject. 152. If as a feoffment, it would work a discontinuance. Litt. sec. 594.
The deed of the 2d May, 1752, though not properly acknowledged, is good as a release or confirmation from Orlando Griffith, whereupon to ground the warranty. Shep. 181. 327. Co. Lftt. 235. 371. 385.
All deeds are to be construed with reference to their subject matter. 1 Durnf. 703. This deed is good as a release without being recorded.
At common law all warranties, lineal or collateral, did. bind without assets the heir they descended on, unless it began by disseisin. Litt. sec. 697.
The first law whereby they were restrained was the statute of Gloucester, which barred only a tenant by the curtesy from making a warranty, unless he left assets to descend. Why make this statute if a warranty would not bar without assets ?
But all other cases stood as they did at common law Then came the statute de donis, which creates an estate-tail, and restrains the alienation of it; otherwise estates-tail would have been in the same situation as all other estates at common law.
Warranties are not mentioned in the statute de donis,^ but the Judges adopted the rule in the statute of Gloucester, and by an equitable construction of the statute de donis, made it necessary that a linéal warranty to bar an estate-tail, should have assets to descend. Freem. 60.
Thus stood the law: Tenant by the curtesy, by the statute of Gloucester, and tenant in tail by the construction of the statute de donis, could not bar their heirs by warranty, unless they left assets ty descent. But all other persono might„
*437 Orlando Griffith was neither tenant by the curtesy, nor tenant in tail; and therefore he might bar his heir.
There is no statute law, no adjudged case to the contrary : if there is, I call on the gentlemen to produce it.
But there are many cases to the contrary. Litt. sec. 706, 707. 711, 712. 2 Bl. Comm. 301, 302.
Warranty without assets binds an estate in fee, but not an estate-tail. Jacob Com. Law, 390. 3 Com. Dig. 432.
Third exception. The words of reference in the third section of the act of 1766, c. 14. “ first herein mentioned,” .relates to the first clause, and is within the equity of the act. No purpose can be answered by recording the deed in the County Court that is not effected by the recording it in the General Court.
There is a reason why the certificate should go from one County to another, because the Justices of one County have no cognisance of the power of the Justices of another County; but the power of the judges of the General Court pervades the whole state.
If the deed is acknowledged in the County, it may be recorded in the General Court, which shews the last words respecting the certificate were only to enable a record in the County where the land lay, and without it the clerk of the County could not record. But if that clause had been left out it might be recorded in the General Court.
First exception. By the act passed in 1725, the estate-tail of Catharine in a moiety was changed into an estate in fee to the husband and wife»
The act declares they shall hold in fee-simple an absolute estate of inheritance, and makes no limitation of the estate in case they die without issue, as the will had done, which gave it to the wife in tail. 2 Bl. Rep. 1211.
T'he act is to have a liberal construction, and to be considered as a will. 2 Vez. 354, 355, 356.
Fourth exception. Hearsay not evidence. The witness *438 must speak of facts, and the Court or Jury judge of them, Bull 289, 290.
If the first speech is without oath, the second is no better. If living, what he was heard to say is not the best evidence.
Pinkney, for the appellee. First-point, By the act of assembly, Griffith and wife take a fee in the moiety by entireties. 2 Ld. Raym. 1144, 1145, 1146.
1st. It appears from the preamble of the act, that Orlando Griffith was a p rrchaser for a valuable consideration. It could not therefore be the intention of the act to settle the whole on the wife.
2d. The enacting clause in express words gives them a joint interest in fee, and the subsequent words do not take it away. The subsequent words only prove that the draughtsman of the act did not understand the power of alienation incident to the estate created.
But no implication is to be admitted against the positive words. 2 Ld. Raym. 1152. And it is inconceivable that after the law has positively created a joint estate of inheritance in the husband and wife, such estate is destroyed by the legislature proceeding to give their ideas of the power of alienation consequent upon it.
3d. Words that vrould make others joint-tenants will make husband and w fe each tenants of the entirety. 2 Bl. Rep. 1211. Co. Litt. 299. b. 2 Vern. 120. 2 Lev. 39. And the words of this act will clearly create a joint-tenancy in a common case. 2 Bl. Com. 180.
Second point. Although the alienation of the husband (where baron and feme are seised of the entirety in fee) is voidable by the entry of the wife after the husband’s death, or by the entry of the heir of the wife surviving, yet it is good until so avoided, as a transfer of the fee. Pigot, 72. shews that his povestas alienadi is as great as that of a tenant in tail.
*439 2 Ld. Raym. 779. 1 Bl. Rep. 252. shew, that in the case ^ x % of tenant in tail, his alienation even by -deed of bargain and sale will pass the fee till the entry of issue. See also, Cro. Jac. 332. 417. Law of Eject. 102.
The distinction between the operation of conveyances to Uses, and common law conveyances, (as feoffment,) which operate upon the possession, seems to be that the first maybe avoided by entry, but are good until so avoided, while the latter work a discontinuance, and by tolling the entry-put the estate to a right. So that the nature of Orlando Griffith’s estate enabled him, even by a mere conveyance to uses, to pass a base fee in the entirety, defeasible by a subsequent entry of those who had right.
Third point. The first deed (in 1726) will make the person entering under it (Charles Ridgely) tenant at will to Orlando Griffith. Co. Litt. 56. b.
Fourth point. The second deed (in 1752) may enure as the release of Orlando Griffith. 2 Bl. Comm. 324, 325. And a release to a tenant at will is good. Shep. Touchst. 321.
The two deeds then, taken together, operate as a transfer of a base fee in the entirety to Charles Ridgely; so that unless Mrs. Griffith, in her life-time, (after her husband’s death,) did actually enter and avoid, Charles Ridgely, or those claiming under him, had at the time of her death abase fee, which could only then be avoided by the entry of her heir. But
Fifth point. The heir could not enter and avoid, because he was rebutted by the warranty contained in the deed of 1752.
Warranties are to be favoured. 5 Bac. Air. 453. Co. Litt. 365. b.
This warranty is lineal. Co. Litt. 375. a. 3. 715. “ Wherever the heir could, by any possibility, derive his title by descent to the lands warranted through the warraut *440 ing ancestor', the warranty is linea." See also, 2 Bl. Comma 301.
In this case there was a plain possibility that the heir might have claimed through Orlando Griffith^ the warranting ancestor, by the w ife’s dying first. The warranty therefore is lineal.
Let us now consider, then, whether as a lineal warranty it will bind under all the circumstances of the case. And here we are to consider how it would stand at common law. And again, if good at common law, whether it is impeached by any existing sta ,ute.
1st. At common law all warranties by the ancestor bound the heir on whom they descended, except in the single case of a xvarranty commencing by disseisin. 2 Bl. Comm. 301, 302. Litt. sect. 697. Gilb. Ten. 140, 141.
It was totally immaterial whether the warranting ancestor had any right in the premises. His warranty rebutted in all possible instances, that by disseisin excepted.
As this is unquestionably the general rule, we must endeavour to discover whether the present case comes within any known exception to it; and
1st. It was objected in the court below, that this warranty is void, quia it commenced by disseisin»
I answer. To constitute a xvarranty by disseisin is impossible where no disseisin exists: for to make such a warranty, it is necessary not only that there should be a disseisin committed, but that it should be committed by the ancestor warranting, or that he should at least be a party to it. And again, tha; the warranty and disseisin should be simitl and semel, or at least that the disseisin should have been with intent to make the warranty, and quasi uno tempore with the warranty. 2 Bl. Comm. 302. Lift, sect. 698, 699. 702. Co. Lin. 367. a. 369. b. (bottom.)
Examples. The son purchases land and lets to the father for years or at will. The father enfeoffs another with warranty. The feoffment is a disseisin to the son, and the *441 warranty therefore void. Litt. sect. 698. So if the father be tenant by elegit, or statute, of the son’s land, and make a feoffment with warranty. Litt. sect. 698. So if the father be tenant for years, with remainder to the son in fee. 2 Bl. Comm. 302. So if the father disseise the son by an entry and ouster, with intent to enfeoff with warranty. Co. Litt. 367. a.
All these warranties are void, because either a previous disseisin is committed by the ancestor, with the express intent of enfeoffing with warranty, which, if after-wards done, the law couples on account of the intent, with the disseisin, or the very deed in which the warranty is con» tained operates in itself as a disseisin.
But in our case, Orlando Griffith disseised nobody, either previously to his release, or by it. He could not make a disseisin as to his moiety, because he was seised of the inheritance himself.
To disseise tlv. heir was impracticable at any rate, for living' his ance.-.iors he had nothing in die premises.
This could not, therefore, be a zvarranty commencing by
Sidy. It was also objected in the Court below, that this wmrainy is inoperative on the heir upon another ground.
1st- That a release is an equitable conveyance, and transfer' »o more than the party had a right to pass; and that of coursi Criando Griffith, by his release to Charles Ridgely, om> transferred an estate for his own life. 2 Burr. 704 — 715. 10 Co. 96,
2d. That a warranty is only commensurate with the estate to which it is annexed, for that it cannot enlarge an estate, and ceases with it.
I answer as to the first position. It might he contended that it is not law to the extent laid down, agreeably to the authorities already cited.
I might argue that it is true a release without more does not toll an entry, as a feoffment does, after the determina *442 tion of the estate which the grantor had a right to pass 5 hut that an estate granted by a release or bargain and sale, continues till avoided by entry. That the true difference is this: if a man having only a defeasible or limited estate conveyS jn fee by reieaS(J or bargain and sale, the person having right may enter on the expiration of the grantor’s right, and avoid, but the estate continues until so avoided. But if, instead of a release or bargain and sale, afeoffment is used, the estate cannot be avoided by an entry, but only by judgment in a real action. In a word, that the feoffment works a discontinu anee, which the release, or bargain and sale, without more, does not.
But it is totally immaterial, quacunque via data, for let the operation of a release (as an equitable conveyance) be what it may, unconnected with a warranty, yet when so connected, it has all the effect of a feoffment to pass a fee, and equally produces a discontinuance. Gilb. Tenures, 120. Harg. Co. Litt. (note) 330. b. Litt. sect. 601. Salk. 245. 8 Vin. 513, 514, 515. 517. 523, 524, 525, 526. 532, 533. 2 Reeves, 141.
The reason is obvious. The release passes a defeasible fee, avoidable by entry, and the warranty annexed rebuts the entry. For it is to be understood that a warranty passes no right in itself, but merely rebuts the right of another. Shep. Touch. 327. 5 Bac. Abr. 447.
The principles contained in this objection would be ex-tremelyjust and applicable if the warranty was distinct from the release, and not inserted in it.
As it stands, it is no objection at all, for at common law the release of tenant by the curtesy, or even of an ancestor having no interest at all with a 'warranty annexed, was a complete rebutter to the heir. This is proved by the statute of Gloucester of 11 Hen. VII. and by Co. Litt. 385. 387. Litt. sect. 738. Shep. 181. 327. Co. Litt. 265. 371.
When it is said in the books that a warranty cannot *443 enlarge an estate, the meaning is where the warranty is not contained in the deed creating the estate.
Thus, if a deed without warranty passes no more than a life estate, no subsequent warranty operating upon or having reference to that deed can enlarge or have effect beyond it. Such is Seymour’s case, 10 Co. 97. which was cited against us, in the General Court, in support of the objection now under consideration. In Seymour’s case there was no discontinuance, because the warranty was not coupled widt the deed. In our case there was a discontinuance for the reverse cause. The fine in Seymour’s case operated on what passed by the deed, and so the warranty.
But Seymour’s case is fully explained in S Bac. Abr. 96 and 2 Burr. 704 — 715.
The rule, too, that a warranty ceases with the estate to which it is annexed, is to be explained in the same manner, 2. e the estate on the face, oí the deed in which the warranty is contained.
As, if the estate be on condition, the warranty is extinguished when the condition is broken. Co. Litt. 385. a. 387. a. 10 Co. 96. b. And so is 5 Bac. 449. (cited against us in the General Court,) “ the defeasance of the estate destroys the warrant}.” I take this objection, therefore, not to be supportable.
3dl>,. It was also said in the General Court that a warranty never rebuts but where the estate is put to a right, or, in otlu r words, discontinued. This is the true principle of Seymour’s case, and is good law. But here it is proved by the authorities that the estate was discontinued by the release with warranty; and so would it have been in Seymour’s case, had the warranty been inserted in the deed, or the deed and fine had been taken as one conveyance, as in 2 Burr. 704 — 715.
4 hly. It was also said that none but collateral warranties barred at common law, where the party warranting could not rightfully transfer the interest warranted.
*444 I answer. I should like to hear a reason for this distinction, because I can think of none myself but what °Perates against it. Litt. sect. 704. 706. are both lineal warranties where ancestor had nothing in the premises, and yet goodj and so are all the cases in Littleton.
5thly. It was also said that lineal warranty only bars where the heir claims under the title of the warranting ancestor, and in this case he claims ex parte materna.
I answer. This would destroy the definition of lineal warranty, “ may by possibility.” It is further answered by the authorities in Litt. sect. 706, 707.
6thly. It was also said that there could be no release of one tenant in common to another for want of privity, and that therefore our release, and of course the warranty, was void.
I answer. This release was to tenant at will, and that is good according to Sheppard before cited.
7thly. Another objection was, that the warranty descended before the right.
Co. Litt. 371. a. is an answer to this.
Sthly.-The next and last objection taken to the operation of this warranty at common law was, that it did not bar without assets. And of this opinion were the General Court.
I answer. The distinction is between fee and tail. Litt. sect. 711, 712. Coke’s Comm. 374. a. and b. 5 Bac. 441. expressly, and cites Litt. ubi supra. See also, Vaugh. 375 3 Com. Dig. 432.
The arguments of counsel, and the opinion of the General Court, were grounded on what is said in 2 Bl. Comm. 302. where, although it is positively laid down that a lineal warranty rebuts an heir in fee, without assets, yet this reason is given for it, “ for if he (the heir) could succeed in such claim, (i. e. against the warrantee,) he would then have assets by descent, though he had them not before.”
In favour of the rebutter without assets, no authority can be more express; but the reason given is to destroy the whole force of the operation itself. Let us examine it.
*445 1st. The reason assigned by Blackstone only applies to the original introduction of the rebutter. He only means to shew the student his idea of the grounds upon which a lineal warranty was at first held to be a rebutter to the heir without assets. Buthe himself goes onto shew that the rule as to the rebutter was always extended beyond the supposed reason; for it was extended to collateral warranties where it was impossible the reason could have any application. He lays down the rule, and then proceeds to state the cause of its being introduced, but by this he never meant to limit the operation of the rule itself, which he states without any such qualification.
That the rule has no such limitation, is clear from undeniable authority already cited.
2dly. But Blackstone does not assign the true reason. A more simple, and a much more consistent and probable one is given by Lord Coke. (Co. Litt. 373. a. Comm, on sect. 709.) It is more in the spirit of the times which gave use to these rebutters. “ Ncemo prmsumitur alienamposleritatem sum prostulisseP And the same reason is assigned by Blackstone himself, as will be shewn hereafter.
Sdlv. Let the reason of the first introduction of the rule be what it may, it is impossible the doctrine of the General Court can be right.
The principle contended for, is, “ that no lineal warranty was a rebutter at common law, unless where the land warranted, if recovered by the heir, would be assets from the warranting ancestor, and liable on a xvarrantia chartmP
If this be the case, all lineal warranties (as rebutters) without assets, are annihilated at once, and no possible case exists, or ever did exist, since the statute of quia emptores,' where they can or could operate; for no instance can be conceived where the land warranted would, if recovered by the heir, be assets from the warranting ancestor, except where the warranting ancestor had good right to convey, and was seised of the fee. But in such a case the deed itself would be a sufficient title without the aid of warranty, and of course the warranty would be to *446 tally inoperative as a rebutter. Harg. Co. Litt. (note) 374. b.
Thus would this doctrine totally destroy the whole force and efficacy of the rule, that a lineal warranty rebuts, withassetSi) an heir jn fee-simple ; for, according to it, a lineal warranty never rebuts but where there is no use for it, i. e. where the ancestor was tenant in fee, and of course had given a good title by his mere deed ; so that, to gratify the reason given in Blackstone's Commentaries, the rule' he lays down is to be subverted, and to be made applicable to not a single case that can be conceived.
Let us now look into the authorities, and see what are the lineal warranties that have been held to be bars without assets. Are they the cases alluded to by the General Court, i. e. where the land, if recovered, would be assets ? Directly the reverse. And there is not a case in Littleton, upon lineal warranty, that would be law if the General Court are right.
Litt. sect. 706. “ Grandfather, father and son; grandfather is disseised ; the father releases with warranty and dies ; the grandfather dies ; the son is barred by this lineal ■ warranty, because he could not convey the right to the lands but through the father.”
Coke's Commentary. “ Here Littleton putteth an example where the son must claim the land as heir to his grandfather, and yet, because he cannot make himself heir to his grandfather, but by his father, it is lineal.”
Litt. sect. 707. is another case in point. Coke's commentary thereon: “ Here Littleton putteth an example where the heir that is to be barred is not to make his descent by him that made the warranty, as in the case before.”
In this case it is clear the land would not have been assets from the elder brother making the warranty, and yetno assets are required to make it a bar. And in all Littleton, ®r Coke's Commentaries, there is not a case on lineal warranty operating as a rebutter without assets, where the land, *447 if recovered, would have been assets, &c. There is no such case to be found in any authority, because it is impossible it can exist.
It is further to be remarked, that no attempt has been made to produce any case recognising the distinction taken by the General Court, except Blackstone’s Commentaries, which is the reverse of their opinion.
It is plain, then, that assets are not necessary to perfect a lineal warranty at common law,,
But let us now consider the cause why warranties were introduced in deeds of alienation, and we shall find that they were not resorted to so much with a view to the yielding other lands in case of eviction, as to produce a rebutter against the heir, whether assets descended to him or not. Vide Dalrymp. Ten, 96 — 1 02.
It is tv ell known that after feuds became hereditary, and before the statute of Hen. I. c. 70, which in part opened the door to transfers of real property, and the statute or quia emptores, which gave the power of unlimited alienation, the feudatory could not aliene his feud for more than his own life, without the consent of his next heir apparent, as well as that of the lord. 2 BL Comm, 287, 288.
A restriction so inimical to all the .objects of commercial and civil intercourse was submitted to with difficulty, and every means devised to evade its operation. With a view to the heir it was found to be practicable, by inserting; in the deed of alienation a covenant real, called a danse oí warranty, which, descending upon him, rebutted his claim, and thus effectuated the subinfeudation, not by giving a right to the subinfeudatory, which was impracticable, but by repelling the right, of the heir, who alone could hat« defeated it.
The justice and propriety of this mode of eluding the strictness of the feudal policy, to the disherison of the heir, were supported by a reason, in all probability, seldom founded in fact, viz. that it was presumable u no ancestor would wantonly disinherit bis next of blood; and. therefore» *448 that the heir had received a valuable consideration either in land, or in money which had purchased land, and that this equivalent descended to the heir together with the ancestor’s warranty.” 2 Bl. Comm. 301.
“ So that (2 Bl. Comm. 301. in continuation) when either an ancestor, being the rightful tenant of the freehold, conveyed the land to a stranger and his heirs, or released the right,in fee to one who was already in possession, and superadded a warranty to his deed, it was held” (on the presumption of assets, not that he really had) “ that such warranty not only bound the warrantor, but also his heir: and this, whether the warranty was lineal or collateral.”
It appears from this deduction, that the sole object of warranties, in their original, was to rebut the heir from claiming his inheritance from the subinfeudatory of his ancestor ; and that to complete the rebutter, proof of assets was never required, the law in favour of alienations always presuming an equivalent had been given.
And if this was so in the original, we have seen that instead of warranties being narrowed in their effect by super-induced restrictions, they were still farther extended with the progress of commerce, until statutes were passed producing alterations. Of this, the almost endless cases on collateral warranty to be found in the books is clear and decisive proof.
Before the statute de donis the distinction between lineal and collateral warranties was unknown. That statute introduced it<; and, of course, at common law, the operation of both warranties is precisely the same. See Reeves. And it is admitted that collateral warranties barred without assets.
On this part of the case the note in Harg. Co. Litt. 373. a. hadsome weight in the court below. I see nothing in it that entitles it to the slightest. Part of that note is obviously not law. Examples: “ Without assets the ancestor’s warranty never did, and does not now, bind the heir, except when he takes by purchase.” I apprehend this must *449 ¡•mean “ an obligation to yield other lands on eviction.” If ... so it is true. Rut if the annotator is here speaking with a view to the rebutter, his remark is not true in a single instance at common law, and in few now.
^ Did the heir of tenant by the curtes) take by purchase P Did the heir of tenant in dower ? Did the heir take by-purchase in any instance of either lineal or collateral warranty in Coke Littleton P
And yet in all these cases the warranty at common law rebutted without assets.
“Upon inquiry it will be found that the cases where the operation of warranty still remains are reduced to two: 1. Tenant in tail to bar issue with assets ; 2. Tenant in tail to bar those in remainder without assets.”
I answer that upon inquiry it will be found there is hardly a syllable of truth in the whole of this position. And as it falls in with the course of the argument in this sause, I shall endeavour to shew it.
1 take it that warranties remain at this day as they were at common law, except so far as they have been altered, by statute. We have already seen the extensive ope* ration of them at common law, and it now remains to consider how far statutes have interfered with, or narrowed, their operation. This inquiry is the more material, as, in the Court below, statutable restrictions were relied on by the plaintiff’s counsel in defeasance of this warranty.
1. The first statute that had any effect on warranties was the statute of Gloucester, 6 Edw. I. c. 3. by which the collateral warranty of tenant by the curtesy either during the wife’s life, or after her death, was declared to be no bar without assets. Hargr. note, ubi sup. 2 Inst. 292, 293, 294. 3 Bl. Comm. 302, 303. 3 Com. Dig. 432„ 433. Gilb. Ten. 141, 142. There may be tenants by the curtesy, living the wife. 2 Bl. Comm. 127.
2. Statute de donis, 13 Edw. I. c. 1. On the construction whereof, by analogy to the statute of Gloucester, it was held *450 that the warranty, of the tenant in tail should not bar the issue without assets, which proves it always did in fee-simple cases. See Gilb. Ten. 142. Reeves.
3. Statute 11 Hen. VII. c. 20. makes void the warranty of tenant in dower.
4. Statute 4 and 5 Ann. c. 10. vacates all warranties by tenant for life, and the collateral warranty of any ancestor not having an estate of inheritance in possession.
These are all the statutes in any manner affecting warranties, none of which, except the statute de donis, with a view to the heir in tail, relate to lineal warranties. Subject to the restrictions and provisions of these statutes, Warranties are now as at common law. It follows, that instead of what is laid down as to the present state of warranties by Hargrave in his note, lineal warranties descending upon an heir in fee-simple have, without assets, as full and complete an operation in all respects as they had at common law. Collateral warranties are indeed much narrowed ; for, except the case of tenant in tail barring those in remainder by his warranty, I do not know a case where collateral warranty without assets would now be a bar.
I have shewn, then, that this warranty is a good lineal Warranty, and would bar at common law without assets. I I have also shewn that no statute impeaches it,- or makes assets necessary to its efficacy. It follows that on this part ©f the case the plaintiff was barred of his ejectment, and that therefore the judgment should be affirmed.
But admitting that the warranty did not bar without assets, still it appears from what has been shewn that the plaintiff could not bring ejectment.
1. To recover in ejectment the plaintiff must have a right of, entry.
2. A discontinuance tolls the entry of the heir.
3. We have shewn that the release with'warranty discontinued the estate and put it to a right.
*451 If the tenant in tail releases with warranty, it is no re-butter to the issue if no assets descend. But it still puts him to his formedon. He cannot bring ejectment.
Feoffment with warranty binds the heirs only to render the value as it was at the time of the feoffment. 2 Bac. Abr. 129. Co. Litt. 32. a. Perk. 328. If the husband makes feoffment in fee of lands, and feoffee afterwards improves them in value, the wife of the feoifor shall have dower only according to the value in the husband’s time. Id. ih. Otherwise, if the heir of the husband improve after husband’s death, for then she shall have dower of the improved value, quia her title consummate at the husband’s death.
On the third hill of exceptions. The sole question on this exception arises on the deeds of lease and release executed by Mrs. Griffith, afterh er husband’s death, to Charles Ridgely, the heir, in 1773, (March 9th and 10th,) acknowledged before two Justices of Anne Arundel County, where Mrs. Griffith resided, and recorded in the Provincial Court ¡ and the Court below have adjudged them good.
By the act of November session, 1766, c. 14, s. 3. it is provided that when the person, &c. making any deed, &c. “ shall live remote from the Provincial Court, or out of the County,” See. “ such person to acknowledge the same in the County Court of the said County, or before two Justices of the said County, wherein he, she, or they, shall re-, side,” &c. &c. “ Such deed or conveyance shall be taken, &c. and shall be as good and valid as if the same had been acknowledged in manner first herein mentioned.”
And the manner first therein mentioned in the second sec*lion (the first section being merely the preamble) is, that if the deed is acknowledged in the Provincial Court, or before one of the Justices thereof, &c. it may be recorded either in the records of the County where the land lies, or in the records of the Provincial Court.
*452 To give this act a rational construction, it cannot bo presumed that the Legislature meant to confine the recording of such a deed to the County Court, win.-.: all others are permitted to be recorded in the Provincial (now General) Court.
The only argument that can be raised against us is on the words “and such certificate shall be a sufficient warrant for the Clerk of such County where the lands, &c. dolie to enrol,” &c. Had it not been for these words, there could, have been no doubt; and it appears to me they ought to create none. There was a propriety in this provision, and no necessity to say any thing of the Provincial Court.
The General Court are supposed to know who are Justices in the several Counties, and who are not, the commissions being all recorded in their records. In another County they are not supposed to know it, and therefore this provision. Had it not been for this provision, the deed could not have been recorded in the County Court at all. The act ought to receive a liberal construction,
In this case there are four exceptions, one by the defendant, and the others by the plaintiff; and although the Court of Appeals should differ from the General Court on the opinion in favour of the plaintiff, yet if on the other exceptions it appears that the ultimate judgment is right, they will not reverse. Cowp. 502. Lord Munsfield’s Opinion. 504. J. Ashhurst's Opinion.
In our case two titles were brought before the Court, and if on one of these titles we were entitled to a verdict and 'judgment, and it so appears upon the whole record, the Court of Appeals will affirm our. judgment.
If the judgment is reversed here, the plaintiff can only begin again, for the cause cannot be remanded, having come up before the late act.
Martin, Attorney-General, S. Chase and Key, for the appellant.
Cooke, Mechen, and Pinkney, for the appellee?
The Court of Appeals, at November term, 1792, affirmed die judgment of the General Court on the 1st, 3d, and 4th exceptions.

 This part of the Court5s opinion does not appear on ilie lull oi ex-,-fplionsj hut is taitón from Mr. Cooke’s notes*